**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| **IN RE:** ) | |
| **JOSEPH PHILLIP JENNINGS,** ) | |
| **INEDA DURNIL JENNINGS,** ) | **CASE NO. 05-73129** |
| ) | |
| **Debtors.** ) | **CHAPTER 13** |

**MEMORANDUM DECISION**

On April 19, 2006 this chapter 13 case was heard for confirmation of the Debtors' proposed plan and the objection to confirmation filed by one of their creditors, Opal Clifton. At that time the Court sustained the creditor's objection to confirmation on the ground that the Debtors had failed to sustain their burden of establishing the likelihood that the payments provided for in their plan would actually be made. The reasons for that ruling were stated in open court on the record and are incorporated by reference. At the time of that ruling, counsel for the Debtors stated that it seemed unlikely, based on her clients' circumstances, that they could propose a plan which would be able to be confirmed, in view of the Court's ruling on plan feasibility based on the evidence presented at the confirmation hearing. Immediately following this ruling Ms. Clifton's Motion to Dismiss was heard. While counsel for Ms. Clifton has asserted that the creditors would be better off by dismissing the case rather than converting it and seeks only dismissal of the case, the Court has decided for the reasons noted below that conversion of the case back to chapter 7 is the better course of action under the circumstances presented here.

FINDINGS OF FACT

Mr. and Mrs. Jennings, the Debtors, filed a chapter 7 petition in this Court on August 18, 2005. The Debtors' schedules reported that the Debtors owned real estate valued at $117,800.00 as joint tenants with a right of survivorship and subject to two mortgages totaling $143,000.00. Per Schedule D, the Debtors' residence was subject to a first deed of trust held by Option One Mortgage Corporation in the amount of $93,000.00 and a second deed of trust in favor of Opal Clifton in the amount of $50,000.00. In their Statement of Intention filed with their petition the Debtors indicated they intended to surrender this property to the mortgagees. The Debtors reported personal property totaling $19,413.00, all of the equity in which was claimed as exempt in their original schedules.

Aside from the mortgages, the Debtors reported secured debt totaling $12,074.19[1] on Schedule D, comprised of a purchase money security interest in a washer, dryer, stove, dishwasher and refrigerator and a title lien on a 2000 Ford pickup. The Debtors filed a Statement of Intention in which they indicated their plan to continue making monthly payments on the 2000 Ford pickup to Mountain National Bank[2] and to surrender the washer, dryer, stove, dishwasher and refrigerator to Guynn Hardware & Furniture. The Debtors reported unsecured claims totaling $61,504.34, comprised of debts owed to sub-contractors and credit extended to the Debtors through credit cards and charge accounts. The Debtors reported four charge accounts with a total balance of $38,452.64, eleven credit cards totaling $18,777.56 and outstanding debts

---

[1] Guynn Hardware & Furniture's claim of $3,074.19, secured by a purchase money security interest in a washer, dryer, stove, dishwasher and refrigerator. Mountain National Bank's claim of $9,000.00, secured by a title lien on a 2000 Ford pickup.

[2] The payment on the 2000 Ford pickup is listed as an installment payment on Schedule J.

2

to seven sub-contractors totaling $4,274.14.

One of the Debtors' major creditors was Ms. Opal Clifton, for whom Mr. Jennings had contracted to build a vacation home. Unfortunately Mr. Jennings did not pay at least some of the sub-contractors and suppliers of materials for this residence from funds disbursed to him from construction draws; as a result a number of notices of various mechanics' liens were filed. This unsatisfactory state of affairs resulted in a lawsuit filed by Ms. Clifton against Mr. Jennings in the United States District Court for the Western District of Virginia which was ultimately settled by the Jennings agreeing to pay Ms. Clifton the sum of fifty thousand dollars ($50,000.00). The promise to pay this amount was confirmed in a note payable in two installments signed by the Jennings on March 15, 2005 in which they promised to pay Ms. Clifton $25,000.00 on April 15, 2005 and a second $25,000.00 on May 15, 2005. This note was secured by a security interest in the Debtors' residence as evidenced by a Deed of Trust recorded on March 16, 2005.

Before the first payment came due, more precisely on or about April 4, 2005, the Jennings drove over to Mount Airy, North Carolina and signed over the title to a camping trailer, located in Cherokee County of that state and which they had owned since 1988, to their four sons for no consideration valuable in law. On April 22nd, the North Carolina Division of Motor Vehicles issued a new certificate of title to this trailer in the names of the four sons. Approximately four months later, on August 18, they filed their voluntary petition under chapter 7 of the Bankruptcy Code in this Court, apparently without having made any payment whatsoever to Ms. Clifton upon the settlement note. That petition was accompanied by the required Statement of Financial Affairs, which requires a bankruptcy debtor to disclose "all gifts

. . . made within one year immediately preceding the commencement of this case" as well as "all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within one year immediately preceding the commencement of this case." Despite this requirement, the gift of the camping trailer was not disclosed in their bankruptcy filing. Neither was it disclosed in answers to questions asked by the chapter 7 Trustee at the "section 341" meeting of creditors. At the April 19 hearing upon Ms. Clifton's Motion to Dismiss, Mr. Jennings claimed that he did not disclose this gift because he thought only the transfer of real property was required to be reported. It was not disclosed in the bankruptcy case until after Ms. Clifton's counsel sent a letter to the Jennings' bankruptcy attorney inquiring about the ownership of the camping trailer. Thereafter an Amended Statement of Financial Affairs was filed with the Court which did disclose the gift and represented its value to be $3,656.00. The Court, taking into account all of the facts and circumstances presented at the hearing and the demeanor of the witnesses, including the impeachment of Mr. Jennings's truthfulness with respect to testimony given by him in this bankruptcy case concerning whether he had given Ms. Clifton's telephone number to a friend who called Ms. Clifton on his behalf, rejects Mr. Jennings's explanation and finds that Mr. and Mrs. Jennings failed to disclose the gift because they believed that no one who would have any reason to know about it would make it known to their creditors or the Court. The Court regrets having to make such a finding implicating the veracity of debtors aged 80 (Mr. Jennings) and 83 (Mrs. Jennings), but sadly believes that it is warranted under the evidence presented in this case. The Court notes that it has absolutely no reason to believe or suspect that the Jennings disclosed this transfer to their bankruptcy counsel prior to the issue being raised by Ms. Clifton's

attorney. Shortly after the filing of the Amended Statement of Financial Affairs, the Debtors filed a motion to convert their case to one under Chapter 13 of the Bankruptcy Code pursuant to section 706 of such Code.

On September 2, 20005, Ms. Clifton filed a Motion for Relief from the Automatic Stay alleging that the Debtors were in default on the March 15, 2005 note and asking the Court to lift the automatic stay with respect to the Debtors' residence. An agreed order endorsed by Ms. Clifton's counsel and the Debtors' counsel granting the Motion for Relief was entered on September 15, 2005.[3] Option One Mortgage then filed a Motion for Relief on October 25, 2005 requesting relief from the automatic stay to proceed with a foreclosure sale. A default order granting the Motion was entered on November 29, 2005 and the Debtors' residence was sold on December 2, 2005. The sale proceeds were sufficient to pay Option One Mortgage in full and apply $5,458.24 towards Ms. Clifton's note. Consequently, Ms. Clifton filed a proof of claim for $55,507.71, including a $5,458.24 claim secured by the Debtors' residence and a $50,049.47 unsecured claim.

Prior to making the inquiry concerning the ownership of the camping trailer located in North Carolina, counsel for Ms. Clifton negotiated with Debtors' counsel a $10,000.00 settlement of her asserted non-dischargeability cause of action against the Debtors. A motion to approve this settlement was filed with the Court and approved after a hearing. The motion did not make reference to any objection to discharge which Ms. Clifton, or any creditor for that matter, might have against the Debtors. The source of the settlement funds has been

---

[3] The Court notes that the agreed order granting Ms. Clifton relief from the automatic stay is consistent with the Debtors' plan to surrender their residence as set forth in their Statement of Intention.

5

represented to be a loan obtained by the Jennings' four sons, but the Court has no actual evidence before it to make any reliable finding of fact as to the source of such money.

In addition to other exemptions claimed in Schedule C to their petition, the Debtors claimed certain exemptions under the Virginia homestead exemption statute, Va. Code § 34-3. They duly recorded homestead deeds prepared by their bankruptcy counsel. After it was determined as a result of questions raised by Ms. Clifton's counsel that the Jennings had previously filed homestead deeds in Virginia preceding the filing of a 1989 bankruptcy case, their counsel prepared new homestead deeds which rescinded any exemptions claimed in the recent filing. Again the Court has no reason to believe or suspect that Debtors' counsel was aware of the earlier homestead deeds when she prepared for her clients the new ones filed in connection with the present bankruptcy case. Neither does the Court make any finding of improper intent on the Jennings part in the signing and recording of these deeds as it can well believe that they would not recall them after the passage of fifteen years. The Court has not obtained the records of the prior bankruptcy case and therefore has no knowledge of whether the ownership of the camping trailer was disclosed in that proceeding.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. Adjudications concerning the proposed confirmation of chapter 13 plans and either dismissal or conversion of bankruptcy cases are inherently "core" bankruptcy proceedings pursuant to 28 U.S.C. § 157(b)(2)(A) and (L).

11 U.S.C. § 1325(a) sets forth the necessary requirements of a confirmable

chapter 13 plan. Subsection (a)(6) states what is commonly called the "feasibility" requirement, in the words of the statute, that "the debtor will be able to make all payments under the plan and to comply with the plan." This Court has previously held in a different case that the debtor bears the burden of proving that all of the standards enumerated in § 1325(a) have been met. *In re Brown*, 244 B.R. 603, 609 (Bankr. W.D. Va. 2000); *see also* Barry Russell, *Bankruptcy Evidence Manual* § 301.80, at 907-09 (2006 ed.). At the April 19th hearing, the Court ruled from the bench for the reasons stated on the record that feasibility had not been established by a preponderance of the evidence. Counsel for the Debtors acknowledges that based on the Court's rationale, the Debtors do not have the ability to propose a confirmable plan. Under these circumstances the alternatives for the Court to consider are to dismiss the case, the relief requested by Ms. Clifton, or to convert it back to chapter 7. In addition to Ms. Clifton's Motion to Dismiss, the chapter 13 Trustee filed a motion to convert or dismiss the case, although she announced at the beginning of the hearing that the Debtors were current in their scheduled plan payments, but then moved to the rear of the courtroom and advised the Court that she did not choose to participate in the hearing. 11 U.S.C. § 1307(c) provides the statutory authority for this Court, "on request of a party in interest or the United States trustee and after notice and a hearing, . . . [to] convert a case under . . . chapter [13] to a case under chapter 7 of this title, or [to] dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including" ten enumerated specific grounds.

      Although the chapter 13 trustee did not formally withdraw her motion to convert or dismiss, neither did she choose to prosecute it at the scheduled hearing thereon. On the other hand, counsel for Ms. Clifton most assuredly did choose to prosecute the Motion to Dismiss

7

which he filed on her behalf. The initial question then is whether the Court is obliged to consider only dismissal, if cause be shown, or can consider either dismissal or conversion. While one treatise has suggested that bankruptcy courts should consider the preference expressed by creditors in making a conversion versus dismissal decision, Keith M. Lundin, *Chapter 13 Bankruptcy* § 312.1, at 312-4 (3d ed. 2000 & Supp. 2004), a general principle with which the Court finds itself in agreement, the Court has not located any authority suggesting that it does not retain the authority provided in 11 U.S.C. §1307(c) to determine that conversion of chapter 7 is in the "best interests of creditors". The language of the statute itself would seem to imply that once cause for either conversion or dismissal is shown, the court should determine which disposition is in the best interests of the creditors generally. *See Blaise v. Wolinsky (In re Blaise), 219 B.R. 946, 950* (B.A.P. 2d Cir. 1998). Furthermore, the language of 11 U.S.C. § 105(a), as amended by the Bankruptcy Act of 1986, expressly authorizes bankruptcy courts "sua sponte" to take "any action . . . necessary or appropriate . . . to prevent an abuse of process." Ms. Clifton is the only creditor to take an active part in this bankruptcy case, but she is far from the only creditor affected by this Court's decision about dismissal or conversion. While Ms. Clifton appears to be the largest creditor, her claim being scheduled at $50,000.00, the Debtors' schedules also list twenty-two unsecured creditors holding claims scheduled in the aggregate amount of $61,504.34. Although it may turn out to be true, as asserted by Ms. Clifton's counsel, that the creditors will not receive any benefit from a chapter 7 liquidation case, the Court is by no means convinced that such will be the inevitable result. It concludes that the interests of the creditors generally are more likely to be served by conversion rather than dismissal for the following reasons:

1. The camping trailer may have some value which could be recovered for the benefit of creditors by a chapter 7 trustee.

2. If the $10,000 settlement was actually funded by undisclosed petition-date assets of the Debtors or by other undisclosed pre-petition gifts or other concealed transfers made by them to their sons or others, such money would be property of the bankruptcy estate recoverable for the benefit of all creditors rather than just for Ms. Clifton's sole benefit.

3. Debtors' counsel expressed the hope that the Jennings might be allowed to continue in their bankruptcy case so that some settlement with their creditors might be possible. A chapter 7 trustee could consider the possibility of a settlement of any possible objections to the Debtors' discharge in consideration of some settlement to be offered on their behalf which would return some distribution to their creditors generally. In the absence of such a resolution of the bankruptcy case or the chapter 7 trustee's ability to effect some recovery for the bankruptcy estate, the Court believes that it is unlikely that the creditors, other than perhaps Ms. Clifton individually, are ever likely to obtain any payment from Mr. and Mrs. Jennings or any recovery from their property.

4. This case was originally commenced as a chapter 7 case. In such a situation, the Court concludes that conversion back to chapter 7 is appropriate for cause under 11 U.S.C. § 1307(c), particularly in the absence of any persuasive evidence or argument that the interests of the creditors would be better served by dismissal. *See In re Baber*, 57 B.R. 597, 598-99 (Bankr. W.D. Va. 1986).

For these reasons the Court by means of its standard conversion order will direct the conversion of this case to chapter 7.

This 27th day of April, 2006.

_/s/ William F. Stone, Jr._
UNITED STATES BANKRUPTCY JUDGE